STANHOPE, RESPONDENT, *v.* EKALAKA TELEPHONE CO.,
APPELLANT.

(No. 4,985.)

(Submitted January 6, 1923. Decided January 25, 1923.)

[212 Pac. 287.]

*Personal Injuries—Telegraphs and Telephones—Pole Lines—
Low Wires—Injury to Trespasser—Nonliability of Owner of
Right of Way—Negligence—Proximate Cause—Evidence—Insufficiency—Highways—Failure to Use—Effect on Right to
Recover.*

Personal Injuries—Evidence—Negligence—Proximate Cause of Injury.
    1.   Plaintiff in a personal injury action must show, not only that
    he was injured, but also that the injury was the result of negligence
    on the part of defendant and that such negligence was its proximate cause.

Same—Trespassers—Extent of Duty of Owner of Premises.
    2.   To a trespasser upon his property, a party owes no duty other
    than to refrain from injuring him willfully or wantonly and to use
    ordinary care to avoid injuring him if he discovers him in peril.

Same—Telegraphs and Telephones—Low Wires—Injury to Trespasser—
Nonliability of Owner.
    3.   Plaintiff, injured by coming in contact with a low-hanging telephone wire in the dark while riding horseback on the right of way
    of the telephone company, was a naked trespasser, defeating his
    right to recover damages.

Same—Failure of Traveler to Use Highway—Effect on Right to Recover
Damages.
    4.   *Held,* under *Howard* v. *Telephone Co.,* 49 Mont. 197, that plaintiff, who, instead of using the traveled portion of the highway was
    riding horseback on the right of way of defendant telephone company, at night, coming in contact with a low-hanging wire, thrown
    off and injured, was guilty of contributory negligence and therefore
    not entitled to recover.

*Appeals from District Court, Fallon County; Stanley E.
Felt, Judge.*

---

    2.   Duty and liability of electric company to trespassers and licensees,
see note in 100 **Am. St. Rep.** 538.
    3.   Liability of electric company for injuries received by adult coming
in contact with wires maintained over private property as distinguished
from public highway, see notes in 21 **Ann. Cas.** 374; **Ann. Cas.** 1918C,
594.

ACTION by Aldie V. Stanhope against the Ekalaka Telephone Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed and remanded, with directions.

*Messrs. Walker & Nelstead,* for Appellant, submitted a brief; *Mr. Rudolph Nelstead* argued the cause orally.

Respondent failed to make out a *prima facie* case of actionable negligence. The principle is elementary that before negligence can become the basis of recovery in a personal injury action a causal connection must be shown between it and the injury complained of. (*Wallace v. Chicago, M. & St. P. Ry. Co.,* 48 Mont. 427, 138 Pac. 499; *Andree* v. *Anaconda Copper Min. Co.,* 47 Mont. 554, 133 Pac. 1090; *Howard* v. *Flathead Ind. Tel. Co.,* 49 Mont. 197, 141 Pac. 153; *Therriault* v. *England,* 43 Mont. 376, 116 Pac. 581; *Fusselman* v. *Yellowstone Valley etc. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Markarites* v. *Chicago, M. & St. P. Ry. Co.,* 59 Mont. 493, 197 Pac. 743.) "Though the proximate or efficient cause of a personal injury may be shown by indirect evidence, it must be of such character that it not only tends affirmatively to show that the accident was due to it, but also to exclude any other theory of its happening." (*De Sandro* v. *Missoula L. & W. Co.,* 48 Mont. 226, 136 Pac. 711; see, also, *Fusselman* v. *Yellowstone Valley etc. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40.)

The burden of proof is not satisfied by mere conjecture. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Gleason* v. *Missouri River Power Co.,* 42 Mont. 238, 112 Pac. 394; *McAllister* v. *McDonald,* 40 Mont. 375, 106 Pac. 882; *Markarites* v. *Chicago etc. Ry.,* 59 Mont. 493, 197 Pac. 743.)

The evidence which plaintiff introduced raises a presumption of negligence on his part. (*Howard* v. *Flathead Ind. Tel.*

*Co.,* 49 Mont. 197, 141 Pac. 153; see, also, *Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905; *Hunter* v. *Montana Cent. Ry. Co.,* 22 Mont. 525, 57 Pac. 140; *Harrington* v. *Butte etc. Ry.,* 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Zvanovitch* v. *Gagnon & Co.,* 45 Mont. 180, 122 Pac. 272.)

*Mr. D. R. Young,* for Respondent, submitted a brief.

Citing: *Guinn* v. *Delaware etc. Tel. Co.,* 19 Am. Neg. Rep. 389; *Daltry* v. *Media El. L. Co.,* 208 Pa. St. 403, 57 Atl. 833; *Wilson* v. *American Bridge Co.,* 74 App. Div. 597, 77 N. Y. Supp. 820; *Travell* v. *Bannerman,* 71 App. Div. 439, 75 N. Y. Supp. 866; *Caglione* v. *Mt. Morris El. L. Co.,* 56 App. Div. (N. Y.) 191; *Connell* v. *Keokuk El. Ry. & P. Co.,* 131 Iowa, 622, 109 N. W. 177; *Davoust* v. *City of Alameda,* 149 Cal. 69, 9 Ann. Cas. 847, 5 L. R. A. (n. s.) 536, 84 Pac. 760.

MR. JUSTICE STARK delivered the opinion of the court.

This is an action to recover damages for personal injuries caused by the alleged negligence of the defendant, a corporation which owned and operated a telephone line between Ekalaka and Baker. It appears that between these two places there was a public highway, which for brevity we shall refer to as the main road. About ten miles southwesterly from Baker this highway entered the south half of the southeast quarter of section 27, township 6 north of range 59 east, which belonged to a man by the name of Bechtold, at a point about 400 feet north of its north line, and extended in a southwesterly direction across the same, leaving it at a point about 200 feet north of the south quarter-section corner. At a point about halfway across the west half of this tract a private road leading to the George Staff ranch branched off the main road, extending in an easterly direction, which road will be referred to as the George Staff road.

The pole line of the defendant company extended along the southerly line of the main road until it reached a point approximately 300 feet northeasterly from the place where the George Staff road branched off the main road, thence departed

from it and ran in a southwesterly direction, crossing the
south line of the section about 600 feet east of the south quarter
corner, and in its course passed over the George Staff road
at a place approximately 200 feet east of its point of departure
from the main road.   One of the defendant's telephone poles
was located about eighteen feet north of the center of this
road, and the next one south of it was about 100 feet from
the center of the road.

The complaint alleges: That at the point where defendant's
telephone line crossed over the George Staff road the wires of
the company "were so negligently and carelessly kept and
maintained by the defendant   *   *   *   upon the seventeenth
day of December, 1919, and for a long time prior thereto,
that a horseback rider could not pass under said wire at said
point," and that "upon said seventeenth day of December,
1919, while plaintiff was lawfully using said road, and riding
his horse thereon, and because of the careless, wrongful, and
negligent manner in which defendant   *   *   *   maintained its
line of telephone at that point,   *   *   *   plaintiff, acting
with due care, and without negligence upon his part, rode
against said wire, and was violently thrown from his horse
to the ground, and thereby sustained lasting and permanent
injuries."

The testimony disclosed that the first telephone pole south
of the George Staff road was broken down, and the wire ex-
tending across the road was slack so that a person riding un-
der the same on horseback might come in contact therewith.
Between the broken telephone pole and the road there was
a draw or ravine with a cut bank which one witness estimated
to be of a depth of seven or eight feet, while others made it
considerably more shallow.

The plaintiff, called as a witness in his own behalf, testified
that he was in Baker on December 17, 1919, and at about 3:30
P. M. started for his home, traveling along the main road,
riding a gentle horse.   When he arrived at a point about
eighty rods northeast of the place where the George Staff road
branched off the main road he passed two men, Axel Lindquist

and Charles Berg, who were also in the road; that he was very
well acquainted with the highway in the particular locality in
which this accident took place; that he knew the telephone
line was along the highway; that he did not remember a thing
after passing Lindquist and Berg until he came to the next
day; that he passed them about 5 o'clock, and that it was dark
at the time, his last recollection being that his horse was walk-
ing.  As to where and how he was injured, plaintiff testified:
"This accident happened on Bechtold's premises.  *  *  *  I
do not remember running against a wire of the telephone com-
pany.  *  *  *  I do not remember anything from the time
I passed Lindquist until the time that he picked me up.  My
mind was blank.  I cannot explain it in any way.  *  *  *
I have explained my being on the premises of Ludwig Betchtold,
say eight or ten or twelve rods off the highway—even off the
road; I told you I couldn't remember a thing since I passed
Axel Lindquist.  There is a blank there.  *  *  *  I suppose
I was traveling on the main highway.  I don't know.  The dis-
tance from where I met Mr. Lindquist to where I was picked
up is pretty close to eighty rods.  I can't remember a single
thing that happened during that time.  *  *  *  I took it for
granted that I ran into a wire."

Axel Lindquist testified that a few minutes after plaintiff
passed him on the road he found him (plaintiff) lying on the
ground at a point off the road about seven or eight rods
southwesterly from the point where the telephone line crossed
the George Staff road, and about ten or twelve rods south of
the main road; that plaintiff was "trying to come to, as though
he had been hurt—out of his sense," and that plaintiff
"wanted to know what had happened."

Frank Stanhope, plaintiff's father, testified that the day
following the accident he went to the place where plaintiff was
discovered after the injury to look for plaintiff's mittens, cap,
and spur, and "I saw indications of the accident over there.
I seen blood on the wire in three different places.  I went
straight down the Ekalaka road, and just before I struck the
George Staff road I went right toward the telephone wire.

\* \* \* Just before I got to the telephone wire I found one mitten, and when I went up to the telephone wire there was three spots of blood on the wire, I should judge about a foot or a foot and a half apart. \* \* \* I went there and found this other mitten and the spur.'' This witness identified the place where he found spots of blood on the wire and the mittens and the spur as being close to the place where the plaintiff was discovered by the witness Lindquist.

The complaint alleges, and the answer admits, that the defendant ''owned the necessary poles, crossbars, \* \* \* and other things necessary for the purpose of carrying on its said business.'' This allegation is broad enough to embrace the necessary easements and rights of way for the purpose of carrying on the business, including one across the Bechtold premises for the pole line, so that it affirmatively appears that the defendant maintained its line across the Bechtold premises under a right or title thereto, and was not a trespasser thereon. The evidence above quoted, with the testimony of other witnesses showing the extent of plaintiff's injuries, constitutes his case as disclosed in the record.

After the plaintiff rested his case the defendant interposed a motion for a nonsuit, which was denied. The defendant then introduced some testimony but it did not tend in any way to throw light upon the acts of the plaintiff at or before the time he received the injuries complained of, and thereafter moved the court to direct a verdict in its favor and against the plaintiff, which motion was denied. The jury returned a verdict in favor of plaintiff, upon which judgment was entered. From this judgment, and an order denying its motion for a new trial, the defendant appeals.

As we view the case, it is only necessary to consider the rulings of the court upon the motions for nonsuit and directed verdict. Conceding for the purpose of argument, but not deciding, that the circumstances proven by the plaintiff were sufficient to establish, *prima facie,* that his injuries were the result of coming into contact with the defendant's telephone line at the place where the spots of blood were found on the

[65 Mont. 599.]

wire, still he has fallen far short of making out a case of actionable negligence against the defendant.

It was incumbent upon the plaintiff to show not only that [1] he was injured by coming in contact with defendant's telephone wire as alleged in his complaint, but also that this was the result of negligence on the part of the defendant, and that such negligence was the proximate cause of his injury. This he wholly failed to do.

As above shown, the plaintiff's contact with the defendant's [2, 3] telephone wire, if he ran into it at all, was at a point seven or eight rods south from the place where the wire passed over the George Staff road, and at a place on the Bechtold premises which the defendant was rightfully using as a right of way for its telephone line, and where the plaintiff had no right to be. In other words, so far as the record shows, the plaintiff was a naked trespasser upon the defendant's premises. (29 R. C. L. 57.) The only duty which defendant owed to the plaintiff while he was a trespasser upon its right of way was to refrain from injuring him willfully or wantonly, and to use ordinary care to avoid injuring him if it discovered him in peril. (*Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373.)

Moreover, the facts in this case bring it within the rule laid [4] down by this court in *Howard* v. *Flathead Independent Tel. Co.*, 49 Mont. 197, 141 Pac. 153. In that case it appeared that the plaintiff was driving along the public highway at a point where the traveled portion of the road was about twelve feet wide; that the defendant company maintained a pole line along the north side of the highway, and had anchored one of its poles with a guy wire which extended to a point one to three feet from the traveled portion of the road. The plaintiff's injuries resulted from her driving her vehicle outside of the graded portion of the road, so that the wheels came in contact with this guy wire, resulting in frightening her horse, the overturning of the vehicle in which she was riding, and consequent injuries. In the course of its opinion the court said: "At the time the plaintiff came in contact with the guy wire she was driving outside the graded or traveled portion

of the highway. Her horse was under control, so that she must have directed its course or permitted it to wander at will. If, in her complaint, plaintiff had alleged that she directed her horse out of the roadway or permitted it to carry her without the traveled or prepared portion, and thereby brought her buggy into contact with the guy wire and caused the runaway which resulted in her injury, her complaint would fail to state a cause of action, without some explanatory allegation excusing her conduct, upon the theory that her own negligence contributed to her injury. This was the rule announced in *Kennon* v. *Gilmer,* 4 Mont. 435, 2 Pac. 21, and is repeated in numerous decisions since that time [citing cases], and this rule is equally as applicable to the proof as to the pleadings; and since the facts which, if they had appeared in her complaint, would have defeated plaintiff's right to recover, were made to appear from her own evidence, without any explanation, they defeated her right to recover and entitled the appellant to a nonsuit [citing cases]."

So, in this case, if the plaintiff had set forth in his complaint all of the facts which the testimony introduced on his part disclosed, without any explanatory allegation showing why he was at the point where he was discovered by the witness Lindquist, he would have failed to state a cause of action, upon the theory that his own negligence contributed to his injury. Defendant's motion for nonsuit should have been sustained.

It appearing that all the evidence which could be obtained was presented at the trial, and that it is wholly insufficient to sustain the verdict, no useful purpose would be served by ordering a new trial. The judgment and order appealed from are reversed, and the cause is remanded to the district court of Fallon county, with directions to dismiss the action.

*Reversed.*


MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.